UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES CHRISTOPHER REED,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:25-cv-02386-CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to magistrate judge jurisdiction. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1988, applied for SSI on March 29, 2022, alleging disability beginning January 1, 2003, later amended to March 29, 2022. Administrative Transcript ("AT") 17, 32, 51. Plaintiff stated that he was unable to work due to schizoaffective disorder, bipolar type; back pain; anxiety; anger reaction; problems with discs in back; esophagitis; arm pain; acromioclavicular joint separation; lower urinary tract symptoms; and schizophrenia. AT 61. At

the August 20, 2024 hearing on his application for benefits, plaintiff testified that had been admitted to psychiatric hospitals ten times and jailed at least twenty-five times. AT 54-55. He testified that he had lost past jobs because of anger and drug and alcohol use. AT 56. Plaintiff testified that mental and physical issues affected him to "about the same" degree. AT 51.

On November 1, 2024, an Administrative Law Judge (ALJ) issued a decision finding plaintiff not disabled since the application date, March 29, 2022. AT 17-34. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant engaged in substantial gainful activity for the following period: January 1, 2023 to March 31, 2023.
>
> 2. However, there [have been] continuous 12-month periods during which the claimant did not engage in substantial gainful activity.[1] The remaining findings address the periods the claimant did not engage in substantial gainful activity.
>
> 3. The claimant has the following severe impairments: schizoaffective disorder, bipolar type; and attention deficit hyperactivity disorder (ADHD).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, [and] carry out simple instructions; he cannot have public interaction; he can have occasional interaction with coworkers and supervisors; and he can handle occasional changes in the work environment.
>
> 6. The claimant has no past relevant work.
>
> 7. The claimant was born [in 1988] and was 34 years old, which is defined as a younger individual age 18-49 on the date the application was filed.
>
> 8. The claimant has at least a high-school education.
>
> 9. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.
>
> 10. Considering the claimant's age, education, work experience, and

---

[1] The ALJ found that plaintiff did not engage in substantial gainful activity for the following periods: March 29, 2022 through December 31, 2022, and April 1, 2023 through November 1, 2024, the date of the decision. AT 20.

> residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, since March 29, 2022, the date the application was filed.

AT 19-33.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in failing to include any limitations for plaintiff's non-severe shoulder impairment in the RFC or explaining why he omitted such limitations; and (2) the ALJ erred in evaluating the medical opinion of the consultative psychological examiner.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability

or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Non-Severe Shoulder Impairment

Plaintiff claims that the ALJ erred by failing to include in the RFC a limitation related to the acromioclavicular joint separation ("AC joint separation") in plaintiff's left shoulder. Plaintiff asserts that his left shoulder impairment and pain was "well documented" since he was injured in a bicycle accident in 2013. Plaintiff notes that he received a steroid injection for his AC joint in 2021, and in March 2022 reported that his AC joint was feeling more stable. Plaintiff further notes that, in April 2022 (the beginning of the relevant period of alleged disability), he "had some days where his shoulder felt better and other days when he reported anterior shoulder pain." (ECF No. 13, citing AT 614.) Plaintiff points out that State medical consultant J. Rule, M.D. found his left shoulder joint separation a severe abnormality of a major joint. (Id., citing AT 82.) Plaintiff argues that the ALJ's failure to include a limitation in the RFC accommodating his left shoulder impairment was harmful error.

The ALJ found AC joint separation to be a medically determinable impairment. AT 20. On this issue, the ALJ found as follows:

> [T]he medical record shows that the claimant has a history of left shoulder injury after a bike accident in June 2013. In September 2018, a left shoulder x-ray revealed chronic AC joint separation. In July 2021, a left shoulder x-ray revealed chronic grade 3 AC joint separation. However, in March 2021, upon physical examination of plaintiff's left shoulder, a provider noted the following normal findings: no deformity; no effusion; full range of motion; nontender; no redness; no ecchymosis; no swelling; and no step defect. In August 2021, the claimant received a left shoulder intraarticular steroid injection to the AC joint. In March 2022, a provider noted that the claimant had a left shoulder steroid injection that "relieved some of the pain" and he was having "less pain" and felt the AC joint was "more stable."

AT 22 (internal citations omitted).

The ALJ found persuasive the medical opinion of State agency consultant J. Rule, M.D. who reviewed plaintiff's record in October 2022 and found "no significant functional limitation

due to physical impairment." AT 23, citing AT 81. The ALJ noted that "this finding is persuasive because it is supported by the objective medical evidence, such as . . . left shoulder x-rays[.]" AT 23. The ALJ also found Dr. Rule's opinion persuasive "because it is consistent with the claimant's statements in the Adult Function Report," including his self-reported ability to lift 45 pounds[2], and "with the claimant's reported activities of daily living," including laundry, cooking, and housework, which he performed independently with no need for physical help.[3] AT 23-24.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Here, because the ALJ relied on substantial evidence that plaintiff's left shoulder impairment did not cause significant physical limitation, the court finds that the ALJ met this burden. Plaintiff's assessed physical RFC was adequately explained and grounded in substantial evidence.

B. Medical Opinion

Plaintiff claims that the ALJ erred in evaluating the opinion of consultative examiner Ona Stiles, Ph.D., who conducted a psychological exam of plaintiff in September 2024. Plaintiff argues that, while the ALJ found Dr. Stiles' opinion partially persuasive, he erred in rejecting her opined marked limitations. Plaintiff also argues that the ALJ erred by failing to incorporate Dr.

---

[2] Citing AT 371.

[3] Citing AT 1743 (September 2024 exam report stating "[c]laimant is independent for basic ADLs and does not need help with preparing meals, or doing light household chores.").

Stiles' opined moderate limitations in the RFC, namely moderate impairment in maintaining attendance, completing a normal workday/workweek, and performing activities without additional supervision.

1. Dr. Stiles' Opinion

On September 19, 2024, Dr. Stiles performed a comprehensive psychological evaluation of plaintiff, including review of his medical records and multiple in-person tests. AT 1741-1749. Dr. Stiles noted that plaintiff "presented in a friendly manner" and "interacted appropriately . . . throughout the evaluation. . . . However some of his thoughts appeared unusual due to psychosis." AT 1743. Dr. Stiles diagnosed plaintiff with ADHD; schizoaffective disorder, bipolar type; and polysubstance abuse disorder, in remission.[4] She found his prognosis to be "fair with comprehensive medical services." AT 1747.

Dr. Stiles found plaintiff to have marked[5] mental impairments in the following areas: ability to perform work activities on a consistent basis; and ability to deal with the usual stresses in a competitive work environment. She found plaintiff to have moderate[6] mental impairments in the following areas: maintaining regular attendance; performing work activities without special or additional supervision; and ability to complete a normal workday or workweek without interruption from psychiatric symptoms. AT 1748-1749.

2. ALJ's Evaluation of Opinion

The ALJ summarized Dr. Stenbeck's opinion, finding parts of it persuasive. As to the opined marked limitations, the ALJ wrote:

> I find the following portions of Dr. Stiles's opinion to be less persuasive**:** he has marked limitation in the ability to perform work activities on a consistent basis and deal with the usual stresses encountered in a competitive work environment[.] . . . This portion of the opinion is less persuasive because it is **not supported by Dr.**

---

[4] Plaintiff reported that he had been sober for almost one year. AT 1743.

[5] Marked limitations indicate "serious limitation" and "a substantial loss in the ability to effectively function." AT 1748.

[6] Moderate impairments indicate "more than a slight limitation . . . but the individual is still able to function satisfactorily." AT 1748.

> **Stiles's mental status examination findings** such as: neutral mood; full affect; unusual thoughts due to psychosis; and he reported having hallucinations and delusions, discussed above. This portion of the finding is less persuasive because it is **inconsistent with the claimant's reported activities of daily living**, such as: he reported no significant difficulties with shopping, self-care, or independent living; he was independent for basic ADLs, and did not need help with preparing meals or doing light household chores; he was able to make change at the store; and, he washes laundry, cooks, does chores, and watches TV, discussed above. Marked limitations are also **inconsistent with the mostly normal mental status examination findings** in other medical evidence.

AT 31-32 (emphasis added; record citations omitted). The ALJ credited the medical opinions of the State agency psychological consultants, who opined that plaintiff had mild to moderate mental limitations. AT 30.[7]

As to moderate limitations, the ALJ noted Dr. Stiles's opined moderate limitations "in the following abilities: maintain regular attendance in the workplace, perform work activities without special or additional supervision; complete a normal workday without interruptions resulting from the claimant's psychiatric conditions; and, interact with coworkers." AT 31. The ALJ listed these limitations among the portion of Dr. Stiles's opinion he found persuasive. AT 31. The ALJ explained that he found this part of Dr. Stiles' opinion persuasive because "it is supported by the objective medical evidence" and "consistent with the rest of Dr. Stiles' mental examination findings," which were largely normal. AT 32 (record citations omitted).

The assessed mental RFC limited plaintiff to understanding and carrying out simple instructions, no public interaction, occasional interaction with coworkers and supervisors, and occasional changes in the work environment. AT 26. The ALJ did not explain how this RFC accounted for moderate limitations in completing a normal workday/workweek and maintaining regular attendance.

3. Legal Standard

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so,

[7] Citing AT 67-68, 86-87.

the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." Sam-Chankhiao v. Kijakazi, 2:20-cv-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022), citing Hardy v. Commissioner, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).

4. Discussion

A. Marked Mental Limitations

Here, the ALJ found Dr. Stiles' opined marked limitations to be unsupported by her mental examination findings and inconsistent with plaintiff's ability to perform ADLs, and also inconsistent with normal mental examination findings in the record. The ALJ applied the two required factors; however, plaintiff argues that his reasons for rejecting the opined marked

limitations were inadequate. Plaintiff points to record evidence of "delusional thought content, paranoia, anger dysregulation, and psychiatric hospitalization" that could be interpreted as consistent with marked mental limitations. (ECF No. 16 at 4-5.)

Under the revised regulations for evaluating medical opinions, "an ALJ need only provide 'an explanation supported by substantial evidence.'" Kitchen v. Kijakazi, 82 F.4th 732, 740 (9th Cir. 2023) (quoting Woods v. Kijakazi, 32 F.4th. 3d 785, 792 (9th Cir. 2022)). In Kitchen, the Ninth Circuit found that substantial evidence supported an ALJ's explanation that severe mental limitations were inconsistent with the opining physician's "own unremarkable mental status examinations." Id. at 740 (quotation marks omitted). See also Ross v. Comm'r of Soc. Sec., 2023 WL 2341342, *2 (9th Cir. Mar. 3, 2023) (unreported) (ALJ properly found marked mental limitations unsupported by "mostly normal" mental status exam and inconsistent with "other normal psychiatric findings" in claimant's history); Johnson v. Kijakazi, 2022 WL 3998572, *1 (9th Cir. Sept. 1, 2022) (unreported) (ALJ properly found opined marked mental limitations not supported by normal mental examination findings).

As to the supportability factor, the ALJ reasoned that plaintiff was "capable of a wide range of activities of daily living" and had largely normal mental status exam findings in the record. The ALJ noted that plaintiff's mental symptoms responded to treatment; he also relied on medical opinions finding plaintiff to have less than marked mental limitations. While plaintiff cites evidence suggesting severe mental symptoms at times, the evidence is "susceptible to more than one rational interpretation." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The ALJ's rejection of marked mental limitations is supported by substantial evidence.

B. Moderate Mental Limitations

Lastly, plaintiff argues that the ALJ failed to incorporate Dr. Stiles' opined moderate mental limitations into the RFC, even while crediting this portion of her opinion. Defendant argues that the RFC accounts for these limitations by restricting plaintiff to simple work with no public interaction, occasional interaction with coworkers and supervisors, and occasional changes

in the work environment.

The ALJ credited the part of Dr Stiles' opinion finding moderate limitations in maintaining attendance, working without special supervision, interacting with coworkers, and completing a normal workday/workweek without interruption from mental symptoms. AT 31. Moderate mental limitations do not necessarily preclude employment. See Rose M.E. v. Saul, 2021 WL 1612091, *3 (C.D. Cal. April 26, 2021) ("The SSA defines a 'moderate' limitation to mean 'there is more than a slight limitation in this area, but the individual can still function satisfactorily.'") (cleaned up) (collecting cases).

Setting aside the other moderate limitations (regarding supervision and interaction), the court considers whether moderate limitations in the ability to maintain attendance and complete a workweek are accounted for in plaintiff's RFC for simple work. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) ("[A]n ALJ is not free to disregard properly supported limitations."). In the similar case of Peerzay v. Comm'r of Soc. Sec., 2025 WL 915574, *5 (E.D. Cal. Mar. 26, 2024), defendant "relie[d] on Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008) and numerous derivative cases to argue that the ALJ's limitation of Plaintiff to simple work adequately accounted for her abilities[,]" including moderate limitations in attendance. In Peerzay, the court determined that, while there was no "binding Ninth Circuit on this point, . . . the weight of lower court authority, including among judges of this Court, is that an ALJ errs by failing to address or adequately explain moderate limitations on attendance or completion of a workday/workweek." 2025 WL 915574, **5-6 (collecting cases); see also Harrell v. Kijakazi, 2021 WL 4429416, *6 (E.D. Cal. Sept. 27, 2021) (case law is split "but tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for" moderate limitations in attendance and completing a normal workday/week); Macias v. Saul, 2021 WL 856423, *6 (E.D. Cal. Mar. 8, 2021) ("Courts have rejected the argument that a . . . limitation to simple tasks in the RFC adequately accounts for moderate limitations in the ability to maintain regular attendance or complete a normal workday") (collecting cases)). But see Rhonda E.G. v. Saul, 2021 WL 2262552, *3 (C.D. Cal. June 23, 2021) (moderate limitations in mental functioning are sufficiently accommodated by RFC for simple, routine tasks) (collecting cases).

Here, the ALJ did not explain how the RFC accounted for moderate limitations in attendance and completing a normal workday/workweek. While reasonable minds can differ, the undersigned agrees with the line of cases holding that an RFC for simple tasks does not, without some explanation, account for moderate limitations in these areas. Such limitations tend to be based on disruptive, somewhat unpredictable mental symptoms that affect the stability required to maintain a job, not its performance. See Maravillas v. Comm'r of Soc. Sec., 2024 WL 4333284, *4 (E.D. Cal. Sept. 27, 2024) (RFC for simple tasks with occasional predictable changes did not account for opined moderate limitations in ability to complete a normal workday/week). The vocational expert testified that chronic absenteeism and/or excessive time off-task would eliminate all jobs. AT 57. Plaintiff has shown harmful error and is entitled to summary judgment on this claim.

REMEDY

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is

uncertain and ambiguous, the proper approach is to remand the case to the agency.”).

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ’s determination complies with applicable legal standards and is supported by the record as a whole.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff’s motion for summary judgment (ECF No. 13) is GRANTED;
2. Defendant’s cross-motion for summary judgment (ECF No. 15) is DENIED;
3. The Clerk of Court shall enter judgment for plaintiff; and
4. This matter is remanded for further proceedings in accordance with this order.

Dated: August 6, 2026

Carolyn K. Delaney

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/reed2386.ssi.ckd